| | | |
|---|---|---|
| **CONVEY CARGO INC** | * | IN THE |
| **d/b/a: AMIR LOGISTICS LLC** | | |
| 139 Laurel Woods Court | * | |
| Abingdon, MD 21009 | | CIRCUIT COURT |
| | * | |
| *Plaintiff,* | | FOR |
| | * | |
| **ABIDOVA FARIDA** | | BALTIMORE COUNTY |
| 5 Russern Court., Apt 2B | * | |
| Baltimore, MD 21215 | | |
| | * | |
| *Plaintiff,* | | |
| | * | |
| **AZIZJON ABIDOV** | | |
| 5 Russern Court., Apt 2B | * | |
| Baltimore, MD 21215 | | |
| | * | |
| *Plaintiff* | | |
| | * | |
| *v.* | | |
| | * | |
| **SUPER EGO HOLDING, LLC.** | | |
| s/o: Resident Agent – Aleksandar Mimic | * | |
| 677 N. Larch Avenue | | |
| Elmhurst, IL 60126-1521 | * | C-03-CV-23-001734 |
| | | |
| *Defendant.* | * | CASE NO.: _____ |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT FOR BREACH OF CONTRACT(S), BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY, BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARITUCLAR USE, UNJUST ENRICHMENT OR IN THE ALTERNATIVE TO VOID CONTRACT(S)

Plaintiffs, Convey Cargo Inc d/b/a Amir Logistics LLC (hereinafter "Convey Cargo") and Abidova Farida, and Azizjon Abidov, by and through their attorney, Kent L. Greenberg, files this Complaint for Breach of Contract(s), Breach of Implied Warranty of Merchantability, Breach of Implied Warranty of Fitness for a Particular Use, or in the Alternative to Void Contract(s) and for cause states as follows:

## PRELIMINARY STATEMENT

1. This is a breach of contract action, resulting from the Defendant's untimely and unlawful

1

repossession of the Plaintiff's leased commercial semi-trailer truck, as well as Defendant breach of the Implied Warranty of Merchantability and the Implied Warranty of Fitness for Particular Purpose relating to the Plaintiff's lease of four (4) commercial semi-trailer trucks.

## PARTIES

2. The allegations contained in Paragraphs One (1) are incorporated herein by reference.

3. Plaintiff, Convey Cargo, is an interstate trucking business, registered and incorporated in the State of Maryland, with its principal place of business located at 139 Laurel Woods Court, Abingdon, MD 21009. Convey Cargo also does business as Amir Logistics LLC.

4. Plaintiff, Abidova Farida, is the President of Convey Cargo. Plaintiff has been a resident of Baltimore County for more than one (1) year prior to filing this complaint.

5. Amir Logistics LLC (hereinafter "Amir Logistics") is a domestic limited liability corporation with its principal place of business located at 139 Laurel Woods Court, Abingdon, MD 21009.

6. Plaintiff, Azizjon Abidov is the president of Amir Logistics. Plaintiff has been a resident of Baltimore County for more than one (1) year prior to filing this complaint.

7. Plaintiffs Farida and Abidov are married to each other.

8. Defendant, Super Ego Holding, LLC (hereinafter "Super Ego") is an unregistered foreign limited liability corporation, formed and registered in the State of Illinois, with its principal business address listed as 621 IL Route 83, Ste 240, Bensenville, Illinois 60106.

## JURISDICTION AND VENUE

9. The allegations contained in Paragraphs One (1) through Eight are incorporated herein by reference.

2

10. This court has jurisdiction pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1), which provides that a court may exercise personal jurisdiction over a person, who directly or by an agent, transacts any business or performs any character of work or service in the State.

11. This court has jurisdiction pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(2), which provides that A court may exercise personal jurisdiction over a person, who directly or by an agent, Contracts to supply goods, food, services, or manufactured products in the State.

12. This court has jurisdiction pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(3), A court may exercise personal jurisdiction over a person, who directly or by an agent, causes tortious injury in the State by an act or omission in the State.

13. This court has jurisdiction pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(4), which provides that a court may exercise personal jurisdiction over a person, who directly or by an agent, "causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State."

14. Defendant derives substantial revenue from the goods, specifically the commercial vehicles leased by the Plaintiffs.

15. Venue is proper pursuant to Md. Courts Jud. Pro. Code Ann. § 6-202(3), which provides that an action against a corporation which has no principal place of business in the State, may take place in the county where the Plaintiff resides.

16. As cited above in Paragraph Five (5), Defendant is an unregistered foreign limited liability corporation, which has no principal place of business in the State of Maryland, therefore the action may take place in the county where the Plaintiff resides.

17. Plaintiff, Abidova Farida, resides in Baltimore County, Maryland.

3

18. All relevant lease agreements hereto include a Jurisdiction Clause, which provides that all rights and obligations under said agreements shall be governed by the law of the State of Illinois.

19. Pursuant to U.C.C. § 2A-106(1), if the law chosen by the parties to a consumer lease is that of a jurisdiction other than a jurisdiction in which the lessee resides at the time the lease agreement becomes enforceable or within 30 days thereafter or in which the goods are to be used, the choice is not enforceable.

20. The State of Illinois is a jurisdiction other than a jurisdiction in which the lessee(s) resided at the time the lease agreement became enforceable.

21. Plaintiffs have respectively resided in Harford County, Maryland and Baltimore County, Maryland at the time the lease agreement becomes enforceable.

22. The State of Illinois is not the proper jurisdiction for this matter to be heard.

23. Baltimore County Maryland is a proper jurisdiction for this matter to be heard.

## <u>STATEMENT OF FACTS</u>

24. The allegations contained in Paragraphs One (1) through Twenty-Four (24) are incorporated herein by reference.

25. On or about December 1, 2022, the parties executed a weekly lease agreement for a Volvo/VNL 760 semi-trailer truck (VIN# 4V4NC9EH7LN242649) (hereinafter "Unit 2649"). The lease term is from November 30, 2022, through November 30, 2023.

26. On or about December 13, 2022, the parties executed a yearly lease agreement for a Freightliner semi-trailer truck (VIN# 1FUJGLDR7JLJS9064) (hereinafter "Unit 9064"). The lease term is from December 12, 2022, through December 13, 2023.

4

Doc ID: 182b05f2f58fe643a140728a63d1304aa520a6013

27. On or about December 23, 2022, the parties executed a yearly lease for a Freightliner semi-trailer truck (VIN# 3AKJGLDR9HSHU3891) (hereinafter "Unit 3891"). The lease term is from December 7, 2022, through December 7, 2023.

28. On or about December 23, 2022, the parties entered into a yearly lease agreement for a Volvo/VNL 760 semi-trailer truck (VIN# 4V4NC9EH3LN242650) (hereinafter "Unit 2650"). The lease term is from December 9, 2022, through December 9, 2023.

29. Each of the lease agreements governing the parties' relationship, includes the following provision concerning Default:

> "If Lessee fails to make any payment when due hereunder, or under any Supplementary Schedules, or under any other Lease or Agreement with the Lessor independent of this Lease, heretofore or hereafter made, or breaches any warranty contained herein, or defaults in performance of any other obligation on its part to be performed and such default continues for five (5) days after Lessor gives written notice thereof to Lessee, the entire unpaid total rent payments for the balance of the term hereof, and all other sums due hereunder, shall be at once due and payable and Lessor may, without demand or legal process., terminate this Lease and any and all Supplemental Schedules thereto and enter upon the premises where the leased Vehicles(s) are located, take possession of and remove same, without any liability to Lessee" (Lease Agreement Paragraph 15(a)).

30. On or about March 13, 2023, Plaintiff received a notice of Default from the Defendant, which read in pertinent part, "[F]ailing to make lease payments is a direct breach of the executed agreements. If this breach is not corrected *within 7 days of this notice*, we have no option but to start the litigation and repossession process to protect our interest." (emphasis added).

31. On or about March 16, 2023, an employee of Convey Cargo Inc., namely Serni Weladislav, was driving Unit 2650, transporting cargo from Maryland to California.

32. On or about the evening of March 16, 2023. while enroute to the cargo delivery destination, Mr. Weladislav stopped to refuel at a TravelCenter (hereinafter "TCA") of America in Merced County, California.

33. Having gone inside to pay for his fuel, Mr. Weladislav was returning to his vehicle when he was flagged down and approached by three (3) unknown individuals.

34. Plaintiffs must note that Mr. Weladislav left the keys in the ignition of the vehicle when he went inside the TCA to pay for his fuel.

35. The individuals identified themselves only by saying, "We are agents of Super Ego."

36. Then individuals then proceeded to hand Mr. Weladislav a phone, where a man identified as "Peter Parker[1] from Super Ego" was on the other end of the line.

37. "Peter Parker" then proceeded to tell Mr. Weladislav via telephone that the owner of Amir Logistics had leased ten (10) trucks and ten (10) trailers from Super Ego, that they were behind on payments, and that they would take the truck now [Unit 2650].

38. Simultaneously as Mr. Weladislav was on the phone with "Peter Parker", the three individuals identified only as agents of Super Ego, proceeded to get into the cab of the truck and drive away with both the truck and the trailer full of cargo.

39. On or about the morning of March 17, 2023, Plaintiffs began calling Super Ego to resolve this alarming situation.

40. On or about the morning of March 17, 2023, Super Ego informed the Plaintiffs, via telephone, that they would be sending them some documents to sign, and once signed, Super Ego would give the Plaintiffs the location to pick up the truck and trailer.

---

[1] "Peter Parker" is widely known as the secret identity of the comic book character "Spider-Man".

41. Later during the morning March 17, 2023, the Plaintiffs were able to locate the vehicle using their own GPS tracking and discovered that the truck had been taken to the F&A Roadside, a tow lot located at 23920 Ingomar Grade, Los Banos, CA 93635.

42. On or about the morning of March 17, 2023, Mr. Weladislav went to the above-mentioned tow lot to inquire about retrieving the vehicle.

43. When Mr. Weladislav arrived at the location, he noticed that the seal[2] was broken, the trailer door was open, and from what Mr. Weladislav could observe[3], a significant portion of the load was missing.

44. When Mr. Weladislav began asking the employees at the tow lot about the missing load, they forbade him from entering the property and began accusing Mr. Weladislav himself of stealing from the trailer.

45. At no time did the Plaintiffs or any of its agents authorize "Peter Parker", the Defendant, or any of its agents to remove any of the payload from Unit 2650.

46. On or about the evening of March 17, 2023, Super Ego began sending the Plaintiffs the "paperwork" to be signed in exchange for the release of Unit 2650.

47. Upon the Plaintiffs' review, the saw that the new paperwork that Super Ego began sending the Plaintiffs was in fact revised versions of the parties' existing lease agreements, having changed the agreements from yearly leases to weekly leases.

48. Defendant further demanded that the Plaintiffs sign the revised lease agreements in exchange for the release of Unit 2650.

49. On or about March 18, 2023, desperate for the release of Unit 2650, Plaintiffs reluctantly executed the revised lease agreements sent to them by Super Ego.

---

[2] The "seal" on the trailer door can best be described as a large plastic zip tie.
[3] Mr. Weladislav, as the driver, was the one who sealed the trailer upon picking up the payload.

Doc ID: 182b05f258fa643a149728a63d1304aa520a601

a. On or about March 18, 2023, Plaintiffs involuntarily executed a weekly lease agreement for a Volvo/VNL 760 semi-trailer truck (VIN# 4V4NC9EH7LN242649) (hereinafter "Unit 2649"). The lease term is from November 30, 2022, through November 30, 2023.

b. On or about March 18, 2023, Plaintiffs involuntarily executed a *weekly* lease for a Freightliner semi-trailer truck (VIN# 3AKJGLDR9HSHU3891) (hereinafter "Unit 3891"). The lease term is from December 7, 2022, through December 7, 2023.

c. On or about March 18, 2023, Plaintiffs involuntarily executed a *weekly* lease for a Volvo/VNL 760 semi-trailer truck (VIN# 4V4NC9EH3LN242650) (hereinafter "Unit 2650"). The lease term is from December 9, 2022, through December 9, 2023.

d. On or about March 18, 2023, Plaintiffs involuntarily executed a *weekly* lease for a Freightliner semi-trailer truck (VIN# 1FUJGLDR7JLJS9064) (hereinafter "Unit 9064"). The lease term is from December 12, 2022, through December 13, 2023.

50. On or about March 20, 2023, Super Ego informed the Plaintiffs that they could retrieve the truck and trailer.

51. Due to the threats against his person, Mr. Weladislav had local police escort him to the tow yard.

52. Upon arrival at the tow yard, neither the truck nor the trailer was present.

53. Again, using their GPS location, the Plaintiffs were able to see that the truck and trailer were now in vacant lot in close proximity to the TCA where the truck and trailer were initially taken from.

54. When Mr. Weladislav arrived at the truck and trailer, he found that it was locked, at which point he was instructed to make $1,500.00 payment via the Zelle digital payment app, ostensibly for having the truck on the lot for the weekend.

8

55. Seeing no other option and desperate for the return of their truck and trailer, the Plaintiffs made a $1,475.00 payment via Zelle to a Frank Leonard, as instructed.

56. On or about March 20, 2023, Unit 2650 was finally released back into the Plaintiffs possession.

57. On or about March 27, 2023, Plaintiffs via undersigned counsel, sent Defendant a letter informing them on Plaintiffs' intent to terminate their existing lease agreements, to return the missing payload from Unit 2650, and informed the Defendant of where each lease vehicle could be retrieved.

58. The leased vehicles are no longer in the Plaintiffs' use and possession and remain at the following locations for retrieval by the Defendants:

    a. VIN# 4V4NC9EH7LN242649 – 11548 Pulaski Highway, White Marsh, MD 21162.

    b. VIN# 4V4NC9EH3LN242650 – 11548 Pulaski Highway, White Marsh, MD 21162.

    c. VIN# 3AKJGLDR9HSHU3891 - 27W021 St Charles Rd, Carol Stream, IL 60188

    d. VIN# 1FUJGLDR7JLJS9064 - 3231 Adventureland Dr., Altoona, IA 50009

### COUNT I – MATERIAL BREACH OF CONTRACT

59. The allegations contained in Paragraphs One (1) through Fifty-Eight (58) are incorporated herein by reference.

60. For a breach of contract claim, the plaintiff must allege: (1) the existence of a valid contract between the plaintiff and defendants, (2) an obligation owed by the

defendant to the plaintiff, and (3) a material breach of the contract. *Elec. Sec. Servs. v. Higgs*, 2015 Md. Cir. Ct.

61. On or about December 23, 2022, the parties entered into a yearly lease agreement for a Volvo/VNL 760 semi-trailer truck Unit 2650. The lease term is from December 9, 2022, through December 9, 2023.

62. lease agreements governing the parties' relationship, includes the following provision concerning Default:

> "If Lessee fails to make any payment when due hereunder, or under any Supplementary Schedules, or under any other Lease or Agreement with the Lessor independent of this Lease, heretofore or hereafter made, or breaches any warranty contained herein, or defaults in performance of any other obligation on its part to be performed and *such default continues for five (5) days after Lessor gives written notice thereof to Lessee*, the entire unpaid total rent payments for the balance of the term hereof, and all other sums due hereunder, shall be at once due and payable and Lessor may, without demand or legal process., terminate this Lease and any and all Supplemental Schedules thereto and enter upon the premises where the leased Vehicles(s) are located, take possession of and remove same, without any liability to Lessee" (emphasis added) (Lease Agreement Paragraph 15(a)).

63. On or about March 13, 2023, Defendant issued the Plaintiffs a written Notice of Default for payments owed.

64. The Notice of Default dated March 13, 2022, instructed the Plaintiffs that they had *seven (7) days* to remedy their outstanding payments, or Defendant would begin the litigation and repossession process.

Doc ID: 182b05f258fe643e149728e63d1304ee520e601

65. On or about March 16, 2023, Defendant and its agents did seize possession of Unit 2650, violating the terms of the parties' lease agreement dated December 23, 2022.

66. Plaintiffs contend that Defendant actions constitute a material breach of contract.

## COUNT II – BREACH OF IMPLIED WARRANT OF MERCHANTIBILITY

67. The allegations contained in Paragraphs One (1) through Sixty-Six (66) are incorporated herein by reference.

68. Pursuant to U.C.C. § 2A-212(1), which provides that, except in a finance lease, a warranty that the goods will be merchantable is implied in a lease contract if the lessor is a merchant with respect to goods of that kind.

69. U.C.C. § 2-104 defines "merchant" as a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

70. Defendant, the lessor, as a broker of semi-trailer trucks is merchant for purposes of the U.C.C.

71. Pursuant to U.C.C. § 2A-212(2)(c) Goods to be merchantable must be at least such as they are fit for the ordinary purposes for which goods of that type are used;

72. Within thirty (30) days of the Plaintiff taking possession of Unit 3891, the truck began to have significant and costly mechanical issues, and within four (4) months the truck broke down and has since been inoperable.

11

73. The fit and ordinary purpose for a Freightliner semi-trailer truck is for the cross-country transportation of heavy goods. The fact that the truck began to have significant and costly mechanical issues mere thirty (30) days after the Plaintiffs took possession leads to the clear inference that Unit 3891 was not fit for the ordinary purpose for which vehicles of that type are used.

74. Within one (1) week of the Plaintiff taking possession of Unit 9064, the truck began to have significant and costly mechanical issues, and within one (1) month the truck broke down and has since been inoperable.

75. The fit and ordinary purpose for a Freightliner semi-trailer truck is for the cross-country transportation of heavy goods. The fact that the truck began to have significant and costly mechanical issues a mere week after the Plaintiffs took possession leads to the clear inference that Unit 9064 was not fit for the ordinary purpose for which vehicles of that type are used.

76. Within forty-five (45) days of the Plaintiff taking possession of Unit 2649, the truck began to have significant and costly mechanical issues.

77. The fit and ordinary purpose for a Volvo semi-trailer truck is for the cross-country transportation of heavy goods. The fact that the truck began to have significant and costly mechanical issues mere forty-five (45) days after the Plaintiffs took possession leads to the clear inference that Unit 2649 was not fit for the ordinary purpose for which vehicles of that type are used.

78. Within thirty (30) days of the Plaintiff taking possession of Unit 2650, the truck began to have significant and costly mechanical issues.

79. The fit and ordinary purpose for a Volvo semi-trailer truck is for the cross-country transportation of heavy goods. The fact that the truck began to have significant and costly mechanical issues mere thirty (30) days after the Plaintiffs took possession leads to the clear inference that Unit 2650 was not fit for the ordinary purpose for which vehicles of that type are used.

Doc ID: 182b05f258fcf643e149728cf3d1304cc520c601

## COUNT III – BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR USE

80. The allegations contained in Paragraphs One (1) through Seventy-Nine (79) are incorporated herein by reference.

81. Pursuant to U.C.C. § 2A-213, which provides that, "except in a finance lease, if the lessor at the time the lease contract is made has reason to know of any particular purpose for which the goods are required and that the lessee is relying on the lessor's skill or judgment to select or furnish suitable goods, there is in the lease contract an implied warranty that the goods will be fit for that purpose".

82. Defendant, the lessor, is a broker of semi-trailer trucks who has thousands of leased semi-trailer trucks on the roads at any given time.

83. Plaintiffs' decision to lease from the Defendant was based on the Plaintiffs' belief that the Defendant could and would provide them with the highest quality truck for their shipping and transportation needs.

84. Within thirty (30) days of the Plaintiff taking possession of Unit 3891, the truck began to have significant and costly mechanical issues, and within four (4) months the truck broke down and has since been inoperable.

85. The fit and ordinary purpose for a Freightliner semi-trailer truck is for the cross-country transportation of heavy goods. The fact that the truck began to have significant and costly mechanical issues mere thirty (30) days after the Plaintiffs took possession leads to the clear inference that Unit 3891 was not fit for the particular use for which vehicles of that type are used.

86. Within one (1) week of the Plaintiff taking possession of Unit 9064, the truck began to have significant and costly mechanical issues, and within one (1) month the truck broke down and has since been inoperable.

13

87. The fit and ordinary purpose for a Freightliner semi-trailer truck is for the cross-country transportation of heavy goods. The fact that the truck began to have significant and costly mechanical issues a mere week after the Plaintiffs took possession leads to the clear inference that Unit 9064 was not fit for the particular use for which vehicles of that type are used.

88. Within forty-five (45) days of the Plaintiff taking possession of Unit 2649, the truck began to have significant and costly mechanical issues.

89. The fit and ordinary purpose for a Volvo semi-trailer truck is for the cross-country transportation of heavy goods. The fact that the truck began to have significant and costly mechanical issues mere forty-five (45) days after the Plaintiffs took possession leads to the clear inference that Unit 2649 was not fit for the particular use for which vehicles of that type are used.

90. Within thirty (30) days of the Plaintiff taking possession of Unit 2650, the truck began to have significant and costly mechanical issues.

91. The fit and ordinary purpose for a Volvo semi-trailer truck is for the cross-country transportation of heavy goods. The fact that the truck began to have significant and costly mechanical issues mere thirty (30) days after the Plaintiffs took possession leads to the clear inference that Unit 2650 was not fit for the particular use for which vehicles of that type are used.

## COUNT IV – DEFENDANT'S UNJUST ENRICHMENT FROM MATERIAL BREACH OF CONTRACT

92. The allegations contained in Paragraphs One (1) through Ninety-One (91) are incorporated herein by reference.

93. A claim of unjust enrichment consists of three elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the

14

benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value..." James B. Nutter & Co. v. Black, 225 Md. App. 1, 123 A.3d 535 (2015).

94. A person confers a benefit upon another, for purposes of an unjust enrichment claim, if he gives to the other possession of or some other interest in money. Restatement of Restitution, § 1. Jackson v. 2109 Brandywine, LLC, 180 Md. App. 535, 952 A.2d 304 (2008).

95. On or about December 13, 2022, the parties executed a yearly lease agreement whereby the Plaintiffs would lease Freightliner semi-trailer truck Unit 9064 from the Defendant in exchange for rent payments.

96. On or about December 23, 2022, the parties executed a yearly lease agreement whereby the Plaintiffs would lease Freightliner semi-trailer truck Unit 3891 from the Defendant in exchange for rent payments.

97. On or about December 23, 2022, the parties executed a yearly lease agreement for a Volvo/VNL 760 semi-trailer truck Unit 2650 from the Defendant in exchange for rent payments.

98. On or about November 30, 2022, the parties executed a yearly lease agreement for a Volvo/VNL 760 semi-trailer truck Unit 2649 from the Defendant in exchange for rent payments.

99. As described in the proceeding Count II and Count III above, Defendant tendered to the Plaintiff semi-trailer trucks that he knew or should have known were defective.

100. Despite tendering to the Plaintiff semi-trailer trucks that he knew or should have known were defective, Defendant still knowingly accepted and received Plaintiffs' lease payments.

101. Defendants continued retention of Plaintiffs' lease payments for vehicles the Defendant knew or should have known were defective constitute such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

## COUNT V – LEASE AGREEMENT(S) ARE VOIDABLE DUE TO OBTENTIO VIA ECONOMIC DURESS

102. The allegations contained in Paragraphs One (1) through One Hundred and One (101) are incorporated herein by reference.

103. A voidable contract is one where one or more parties thereto have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance. Contracts obtained by fraud are not absolutely void, but are voidable at the election of the parties affected by the fraud and binding until properly avoided. *Julian v. Buonassissi*, 414 Md. 641, 645, 997 A.2d 104, 106 (2010).

104. The ancient doctrine of duress of person (later of goods) has been relaxed and extended so as to admit of compulsion of business and circumstances; and the rule deducible from the authorities is that where one, to prevent injury to his person, business, or property, is compelled to make payment of money which the party demanding has no right to receive, and no adequate opportunity is afforded the payer effectively to resist such payment, it is made under duress and can be recovered. *Blumenthal v. Heron*, 261 Md. 234, 245, 274 A.2d 636, 641 (1971).

105. As described throughout this Complaint, the Defendant, from on or about March 16, 2023, through March 18, 2023, did by means of economic duress, specifically by threatening to withholding the Plaintiffs properly leased vehicle, of which Plaintiffs relied as an instrument of their livelihood, did coerce, and induce the Plaintiffs to execute the following revised contracts:

16

a. On or about March 18, 2023, Plaintiffs involuntarily executed a weekly lease agreement for a Volvo/VNL 760 semi-trailer truck (VIN# 4V4NC9EH7LN242649) (hereinafter "Unit 2649"). The lease term is from November 30, 2022, through November 30, 2023.

b. On or about March 18, 2023, Plaintiffs involuntarily executed a *weekly* lease for a Freightliner semi-trailer truck (VIN# 3AKJGLDR9HSHU3891) (hereinafter "Unit 3891"). The lease term is from December 7, 2022, through December 7, 2023.

c. On or about March 18, 2023, Plaintiffs involuntarily executed a *weekly* lease for a Volvo/VNL 760 semi-trailer truck (VIN# 4V4NC9EH3LN242650) (hereinafter "Unit 2650"). The lease term is from December 9, 2022, through December 9, 2023.

106.    Insofar as the above-mentioned agreements were executed via fraud and duress, this Court should declare the agreements voidable at the election of the Plaintiff.

107.    Plaintiffs are entitled to damages in an amount not less than Seventy-Five Thousand Dollars ($75,000.00).

**WHEREFORE**, the Plaintiffs respectfully requests this Honorable Court:

A. Award them damages in an amount not less than Seventy-Five Thousand Dollars ($75,000.00); and

B. Declare all contracts between the parties voidable at the election of the Plaintiffs'; and

C. Any such further relief that the nature of Plaintiffs' cause may require.

Respectfully submitted,

17

Respectfully submitted,

Kent L. Greenberg, Esq.
10995 Owings Mills Blvd., Suite 208
Owings Mills, MD 21117
Tel: 410-363-1020
Fax: (410) 363-1022
Email: kent@klgreenberg.com
CPF No. 8105010097
*Attorney for Plaintiffs*

I further certify, under the penalties of perjury, that the contents of this Complaint for Breach of Contract are true and accurate to the best of my information, knowledge, and belief.

_____
Abidova Farida

I further certify, under the penalties of perjury, that the contents of this Complaint for Breach of Contract are true and accurate to the best of my information, knowledge, and belief.

_____
Azizjon Abidov

18